O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| MARLA K. TAFOLLA, | ) | Case No. SA CV-12-466-SP |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | MEMORANDUM OPINION AND ORDER |
| | ) | |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |

## I.

## __INTRODUCTION__

On April 4, 2012, plaintiff Marla K. Tafolla filed a complaint against defendant Michael J. Astrue,[1] seeking a review of a denial of supplemental security income ("SSI") benefits.  Both plaintiff and defendant have consented to proceed for all purposes before the assigned Magistrate Judge pursuant to 28

---

[1]    Pursuant to Fed. R. Civ. P. 25(d), Carolyn W. Colvin, who is now Acting Commissioner of Social Security Administration, has been substituted as the defendant.

1

U.S.C. § 636(c).  The court deems the matter suitable for adjudication without oral argument.

Plaintiff presents two disputed issues for decision:  (1) whether the administrative law judge ("ALJ") erred at Step Five; and (2) whether the ALJ provided clear and convincing reasons for discounting plaintiff's credibility.[2] Memorandum of Points and Authorities in Support of Plaintiff's Complaint ("P. Mem." at 3-19); Defendant's Memorandum in Support of Answer ("D. Mem.") at 2-9.

Having carefully studied, inter alia, the parties's written submissions, the Administrative Record ("AR"), and the decisions of the ALJ and Appeals Council, the court concludes that, as detailed herein, the ALJ properly discounted plaintiff's credibility in part, but erred at Step Five.  Therefore, the court remands this matter to the Commissioner of the Social Security Administration ("Commissioner") in accordance with the principles and instructions enunciated in this Memorandum Opinion and Order.

## II.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff, who was 49 years old on the date of her July 26, 2010 administrative hearing, is a high school graduate.  AR at 31, 94, 162.

On September 16, 2008, plaintiff filed an application for SSI, alleging an onset date of November 1, 2006, due to lower back pain, pinched nerves, and left hip and leg pain.  *Id.* at 152, 156.  The Commissioner denied plaintiff's application

---

[2]   As discussed *infra*, the ALJ issued a Recommended Decision, the majority of which the Appeals Council adopted.  *See* AR at 1-6, 8-19.  Because the disputed issues concern portions of the ALJ's decision adopted by the Appeals Council, this court, except as noted, will refer to the ALJ's decision.

1 | initially and upon reconsideration, after which she filed a request for a hearing.  *Id.*
2 | at 59-74, 76-78.

3 |     On July 26, 2010, plaintiff, represented by counsel, appeared and testified
4 | before the ALJ.  *Id.* at 25-53.  Alan Boroskin, a vocational expert ("VE"), also
5 | provided testimony.  *Id.* at 45-52.  On August 18, 2010, the ALJ issued a
6 | recommended decision, denying benefits.  *Id.* at 8-19.

7 |     Applying the well-known five-step sequential evaluation process, the ALJ
8 | found, at step one, that plaintiff had not engaged in substantial gainful activity
9 | since September 16, 2008, the application date.[3]  *Id.* at 12.

10 |     At step two, the ALJ found that plaintiff suffered from the following severe
11 | impairments:  lumbar disc disease; lumbar radiculopathy; and mood disorder.  *Id.*

12 |     At step three, the ALJ found that plaintiff's impairments, whether
13 | individually or in combination, did not meet or medically equal one of the listed
14 | impairments set forth in 20 C.F.R. part 404, Subpart P, Appendix 1 (the
15 | "Listings").  *Id.*

16 |     The ALJ then assessed plaintiff's residual functional capacity ("RFC")[4] and
17 | determined that she had the RFC to:  lift/carry twenty pounds occasionally and ten

---

19 | [3]    The ALJ erroneously states that, pursuant to plaintiff's testimony, she
20 | worked after the application date.  AR at 12.  Plaintiff testified that she worked in
21 | 2007, after the alleged disability onset but before the application date.  *Id.* 33-35.
22 | The ALJ concluded that this work did not rise to the level of substantial gainful
    | activity.  *Id.* at 12.

23 | [4]    Residual functional capacity is what a claimant can do despite existing
24 | exertional and nonexertional limitations.  *Cooper v. Sullivan*, 880 F.2d 1152,
25 | 1155-56 n.5-7 (9th Cir. 1989).  "Between steps three and four of the five-step
    | evaluation, the ALJ must proceed to an intermediate step in which the ALJ
26 | assesses the claimant's residual functional capacity."  *Massachi v. Astrue*, 486
27 | F.3d 1149, 1151 n.2 (9th Cir. 2007).

28 |                                      3

1  pounds frequently; sit/stand/walk for six hours out of an eight-hour day but should
2  be allowed to sit and stand at her option; and occasionally climb, balance, stoop,
3  kneel, crouch, or crawl. *Id*. at 14. The ALJ precluded plaintiff from climbing
4  ladders, ropes, or scaffolds. *Id.* In addition, the ALJ determined that plaintiff was
5  capable of understanding and carrying out simple instructions. *Id.*

6     The ALJ found, at step four, that plaintiff was unable to perform her past
7  relevant work of sales/demonstrator, sales clerk, and bank supervisor. *Id.* at 17.

8     At step five, the ALJ determined that, based upon plaintiff's age, education,
9  work experience, and RFC, plaintiff could perform other work "that exists in
10  significant numbers in the national economy," including cashier II and information
11  clerk. *Id.* at 17-18. Consequently, the ALJ determined that plaintiff was not
12  disabled under 20 C.F.R. Part 404, Subpart P, Appendix 2 ("Grid") Rule 202.21.
13  *Id*. at 18-19.

14     On January 19, 2012, the Appeals Council issued a final decision, finding
15  that plaintiff was not disabled and denying benefits. *Id.* at 1-6. The Appeals
16  Council adopted the ALJ's decision except for the findings that plaintiff had past
17  relevant work and that she was not disabled under Grid Rule 202.21. *Id.* at 4.
18  Instead, the Appeals Council found that plaintiff's work as a sales/demonstrator,
19  sales clerk, and bank supervisor were outside of the relevant 15-year period and,
20  therefore, did not constitute past relevant work. *Id.* at 4-5. Because plaintiff had
21  no past relevant work, Grid Rule 202.20 rather than Grid Rule 202.21 was
22  applicable. *Id.* at 5.

23     The decision of the Appeals Council stands as the final decision of the
24  Commissioner.

28                                    4

1

## III.

2

## STANDARD OF REVIEW

3        This court is empowered to review decisions by the Commissioner to deny

4  benefits.  42 U.S.C. § 405(g).  The findings and decision of the Social Security

5  Administration must be upheld if they are free of legal error and supported by

6  substantial evidence.  *Mayes v. Massanari*, 276 F.3d 453, 458-59 (9th Cir. 2001)

7  (as amended).  But if the court determines that the ALJ's findings are based on

8  legal error or are not supported by substantial evidence in the record, the court

9  may reject the findings and set aside the decision to deny benefits.  *Aukland v.*

10  *Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001); *Tonapetyan v. Halter*, 242 F.3d

11  1144, 1147 (9th Cir. 2001).

12        "Substantial evidence is more than a mere scintilla, but less than a

13  preponderance."  *Aukland*, 257 F.3d at 1035.  Substantial evidence is such

14  "relevant evidence which a reasonable person might accept as adequate to support

15  a conclusion."  *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998); *Mayes*, 276

16  F.3d at 459.  To determine whether substantial evidence supports the ALJ's

17  finding, the reviewing court must review the administrative record as a whole,

18  "weighing both the evidence that supports and the evidence that detracts from the

19  ALJ's conclusion."  *Mayes*, 276 F.3d at 459.  The ALJ's decision "'cannot be

20  affirmed simply by isolating a specific quantum of supporting evidence.'"

21  *Aukland*, 257 F.3d at 1035 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th

22  Cir. 1998)).  If the evidence can reasonably support either affirming or reversing

23  the ALJ's decision, the reviewing court "'may not substitute its judgment for that

24  of the ALJ.'"  *Id.* (quoting *Matney v. Sullivan*, 981 F.2d 1016, 1018 (9th Cir.

25  1992)).

26

27

28                                        5

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## IV.

## DISCUSSION

**A.    The ALJ Erred at Step Five**

Plaintiff contends that the ALJ erred at step five when he concluded that she could perform other work, including cashier II and information clerk.  P. Mem. at 4-7.  Specifically, plaintiff argues that her RFC conflicts with the jobs as described in the Dictionary of Occupational Titles ("DOT").  *Id.*  The jobs of cashier II and information clerk require reasoning levels three and four respectively, both of which are incompatible with her RFC.  *Id.*  Further, plaintiff contends that the ALJ failed to solicit a sufficient explanation for the deviation.  *Id*. at 7-9.  The court agrees.

At step five, the burden shifts to the Commissioner to show that the claimant retains the ability to perform other gainful activity.  *Lounsburry v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006).  To support a finding that a claimant is not disabled at step five, the Commissioner must provide evidence demonstrating that other work exists in significant numbers in the national economy that the claimant can perform, given his or her age, education, work experience, and RFC.  20 C.F.R. § 416.912(f).

ALJs routinely rely on the DOT "in evaluating whether the claimant is able to perform other work in the national economy."  *Terry v. Sullivan*, 903 F.2d 1273, 1276 (9th Cir. 1990) (citations omitted); *see also* 20 C.F.R. § 416.966(d)(1) (DOT is source of reliable job information).  The DOT is the rebuttable presumptive authority on job classifications.  *Johnson v. Shalala*, 60 F.3d 1428, 1435 (9th Cir. 1995).  An ALJ may not rely on a VE's testimony regarding the requirements of a particular job without first inquiring whether the testimony conflicts with the DOT, and if so, the reasons therefor.  *Massachi v. Astrue*, 486 F.3d 1149, 1152-53

1  (9th Cir. 2007) (citing Social Security Ruling ("SSR") 00–4p).[5]  But failure to so
2  inquire can be deemed harmless error where there is no apparent conflict or the
3  VE provides sufficient support to justify deviation from the DOT.  *Id.* at 1154
4  n.19.   In order for an ALJ to accept a VE's testimony that contradicts the DOT,
5  the record must contain "'persuasive evidence to support the deviation.'" *Id.* at
6  1153 (quoting *Johnson*, 60 F.3d at 1435).  Evidence sufficient to permit such a
7  deviation may be either specific findings of fact regarding the claimant's residual
8  functionality, or inferences drawn from the context of the expert's testimony.
9  *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 793 (9th Cir. 1997) (citations omitted).

10       In this case, the ALJ made no inquiries as to whether there was a conflict
11  between the VE's testimony and the DOT.  *See* AR at 46-52.  The ALJ simply
12  concluded that "the vocational expert's opinion is consistent with the information
13  contained in the Dictionary of Occupational Titles."  *Id.* at 18.  Thus, the question
14  is whether the ALJ's error was harmless.

15       Although defendant does not expressly state, it appears that defendant
16  concedes that the ALJ failed to ask the VE whether his testimony conflicted with
17  the DOT, but argues that such error was harmless because, in fact, the jobs were
18  consistent with the DOT.   Defendant argues that plaintiff wrongly focuses solely
19  on the reasoning level, which is only one component of the general educational
20  development ("GED").  D. Mem. at 2-6.  Based on the fact that plaintiff is a high
21
22  ───────────────
23       [5]  "The Commissioner issues Social Security Rulings to clarify the Act's
     implementing regulations and the agency's policies.  SSRs are binding on all
24   components of the SSA.  SSRs do not have the force of law.  However, because
     they represent the Commissioner's interpretation of the agency's regulations, we
25   give them some deference.  We will not defer to SSRs if they are inconsistent with
     the statute or regulations."  *Holohan v. Massanari*, 246 F.3d 1195, 1203 n.1 (9th
26   Cir. 2001) (internal citations omitted).
27
28                                    7

1    school graduate, she had the mathematics and language levels to do semi-skilled
2    and skilled work.  Thus, plaintiff's "global GED" is consistent with the jobs.  *Id.* at
3    2-4.  Morever, defendant also contends that the two jobs are considered unskilled
4    and because plaintiff's past jobs were skilled and semiskilled, she could also do
5    unskilled work.  *Id.* at 2, 4.  The court disagrees.

6          Each DOT job description includes GED scales for reasoning, language, and
7    mathematics, which are "aspects of education (formal and informal) which are
8    required of the worker for satisfactory job performance."  DOT, Appendix C,
9    Section III.  To determine a job's simplicity and the reasoning level required, one
10   should look to the GED reasoning level ratings for the job listed in the DOT.
11   *Meissl v. Barnhart*, 403 F. Supp. 2d 981, 983 (C.D. Cal. 2005).  A job's reasoning
12   level "gauges the minimal ability a worker needs to complete the job's tasks
13   themselves."  *Id.*

14         A review of the reasoning level associated with the two jobs the VE
15   identified – cashier II and information clerk – supports the conclusion that there is
16   an apparent conflict in this case.  The VE testified that a hypothetical person with
17   plaintiff's RFC could perform the jobs of cashier II (DOT No. 211.462-010) and
18   information clerk, motor transportation (DOT No. 237.367-018).  AR at 50.  The
19   DOT classifies a cashier II job as reasoning level three and an information clerk,
20   motor transportation job as reasoning level four.  *See* DOT Nos. 11.462-010,
21   237.367-018.  A level three reasoning score assumes a person can "[a]pply
22   commonsense understanding to carry out instructions furnished in written, oral or
23   diagrammatic form [and][d]eal with problems involving several concrete variables
24   in or from standardized situations."  *See* DOT, App. C.  A level four reasoning
25   score assumes a person can "[a]pply principles of rational systems to solve
26   practical problems and deal with a variety of concrete variables in situations where

27

28                                           8

1   only limited standardization exists[, and i]nterpret a variety of instructions

2   furnished in written, oral, diagrammatic, or schedule form." *Id.*  In contrast,

3   plaintiff's RFC limited her to "understanding and carrying out simple

4   instructions."  AR at 14.  For lack of any clearer articulation of her RFC, the court

5   assumes this means plaintiff is limited to simple tasks.

6        There is a split among the circuit courts as to whether the limitation to

7   simple tasks is compatible with a reasoning level of three. *Compare Terry v.*

8   *Astrue*, 580 F.3d 471, 478 (7th Cir. 2009) (a claimant limited to "simple" work

9   could perform a reasoning level three job); *Renfrow v. Astrue*, 496 F.3d 918, 920-

10  21 (8th Cir. 2007) (a claimant with an inability to do "complex technical work"

11  was not precluded from unskilled jobs with a reasoning level of three) and *Hackett*

12  *v. Barnhart*, 395 F.3d 1168, 1176 (10th Cir. 2005) (limitation to simple and

13  routine tasks is inconsistent with level-three reasoning).  The Ninth Circuit has not

14  addressed this issue, but among its district courts that have, they have consistently

15  held that a limitation to simple tasks is consistent with reasoning level two jobs

16  but incompatible with reasoning level three jobs.  *See, e.g.*, *Espinoza v. Astrue*,

17  No. 12-00544, 2013 WL 327889, at *2-*3 (C.D. Cal. Jan. 29, 2013); *McGensy v.*

18  *Astrue*, No. 09-152, 2010 WL 1875810, at *2-*4 (C.D. Cal. May 11, 2010); *see*

19  *also Meissl*, 403 F. Supp. 2d at 983-84.  Therefore, there is an apparent conflict

20  between plaintiff's RFC and the VE's testimony.

21        Defendant correctly contends that the court cannot "rigidly correlat[e]" the

22  DOT reasoning level descriptions with the RFC and that there may be other factors

23  such as plaintiff's education that render her able to perform the jobs the VE cited.

24  D. Mem. at 5.  But this misses the point.  On its face, neither reasoning

25  development level three nor four is consistent with an individual limited to simple

26

27

28                                            9

instructions.  Therefore, the ALJ was required to ask the VE to explain the deviation, which he failed to do.

Finally, defendant's argument that plaintiff is capable of unskilled work based on her past skilled work also fails.  The Appeals Council correctly determined that plaintiff had no past relevant work.  AR at 4-5.  Past relevant work is work a claimant has "done within the past 15 years [] that was substantial gainful activity."  20 C.F.R. §§ 404.1560(b)(1); 416. 960(b)(1).  Plaintiff had not worked since 1993.[6]  AR at 34, 151.  Thus, the Appeals Council properly did not take plaintiff's work history into consideration.

Here, the ALJ failed to even ask the VE whether his testimony was consistent with the DOT, much less ask him to explain the deviation.  *See Massachi*, 486 F.3d at 1152-53.  The error was not harmless.  Accordingly, the ALJ did not meet the Commissioner's step five burden to demonstrate that plaintiff can perform other jobs in the national economy.

**B.** **The ALJ Provided Clear and Convincing Reasons for Discounting Plaintiff's Credibility**

Plaintiff contends that the ALJ failed to provide clear and convincing reasons for discounting her testimony.  P. Mem. at 12-19.  Specifically, plaintiff argues that the ALJ only cited one reason for not crediting her testimony – the objective medical evidence did not support her testimony – which by itself, was legally insufficient.  P. Mem. at 14.  The court disagrees.

The ALJ must make specific credibility findings, supported by the record.  SSR 96-7p.  To determine whether testimony concerning symptoms is credible, the ALJ engages in a two-step analysis.  *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-

---

[6]   Plaintiff tried to sell juice from her house in 2007 but the work did not constitute substantial gainful activity.  AR at 12, 33-35.

10

36 (9th Cir. 2007).  First, the ALJ must determine whether a claimant produced objective medical evidence of an underlying impairment "'which could reasonably be expected to produce the pain or other symptoms alleged.'"  *Id.* at 1036 (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)).  Second, if there is no evidence of malingering, an "ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so."  *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996); *Benton v. Barnhart*, 331 F.3d 1030, 1040 (9th Cir. 2003).  The ALJ may consider several factors in weighing a claimant's credibility, including:  (1) ordinary techniques of credibility evaluation such as a claimant's reputation for lying; (2) the failure to seek treatment or follow a prescribed course of treatment; and (3) a claimant's daily activities.  *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008); *Bunnell*, 947 F.2d at 346-47.

At the first step, the ALJ found that plaintiff's medically determinable impairments could reasonably be expected to cause the symptoms alleged.  AR at 16.  At the second step, because the ALJ did not find any evidence of malingering, the ALJ was required to provide clear and convincing reasons for discounting plaintiff's credibility.  Here, the ALJ discounted plaintiff's credibility because:  (1) the objective medical evidence did not support her "generally disabling symptoms and limitations"; (2) plaintiff indicated that she stopped working on November 1, 2006 due to her condition, but she actually stopped working in 1993; (3) although not enough to constitute substantial gainful activity, plaintiff worked after her alleged onset date; (4) plaintiff displayed drug-seeking behavior; and (5) plaintiff's self-reported problems with her hands appeared to be contradicted by her mother's report.  *Id.*

1

### 1.    Lack of Objective Medical Evidence

2    The ALJ's first ground for an adverse credibility finding – lack of objective

3  medical evidence – is not a clear and convincing reason, in part.  An ALJ "may not

4  reject a claimant's subjective complaints based solely on a lack of objective

5  medical evidence to fully corroborate the alleged severity of pain," but it may be

6  one factor used to evaluate credibility.  *Bunnell*, 947 F.2d at 345; *see also Rollins*

7  *v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001).

8    Here, the ALJ recognized that plaintiff had two back surgeries, a lumbar

9  laminectomy in January 2008 and a spinal fusion in May 2009.  AR at 15-16, 200-

10  02, 329, 338-39.  But the ALJ also noted that an MRI four months after the first

11  surgery showed normal post-operative changes with no evidence for residual or

12  recurrent disc extrusion or protrusion, post-operative fluid collection, or

13  arachnoitis or arachonoid adhesion.  *Id.* at 15, 358.  In October 2008, Dr. Bennett

14  found that plaintiff's residual lumbar radiculopathy had improved.  *Id.* at 15, 275.

15  In April 2009, Dr. Zafar Khan observed that plaintiff had normal alignment of the

16  back with forward flexion until the fingertips touched the knee, no tenderness to

17  palpation, some muscle spasm in the back, normal motor strength in the

18  extremeties, and decreased sensation in the left lower extremity.  *Id*. at 15-16, 324.

19  The ALJ further noted that after the second surgery, Dr. Khan indicated that

20  plaintiff was recovering well, had intact motor strength, sensation, and reflexes,

21  and continued to complain about left leg and calf pain.  *Id.* at 16, 320-21.  The

22  ALJ then found that Dr. Khan characterized plaintiff's recovery as long and slow

23  without providing evidence.  *Id*. at 16, 449.

24    The ALJ was incorrect because the objective medicine supports plaintiff's

25  subjective complaints for at a least portion of the time after the alleged disability

26  onset date.  On January 12, 2007, an MRI showed that plaintiff had a mild 3mm.

27

28

central disc protrusion without evident impingement, decreased hydration signal of the disc, and mild ligamenta flava hypertrophy at the L5-S1 level. *Id.* at 357.  A May 27, 2008 MRI showed that plaintiff had normal postoperative changes.  *Id.* at 358-59.  But an MRI dated April 29, 2009 showed, among other things:  moderate loss of the disc height and disc dehydration at the L5-S1 level; a right laminectomy defect and post surgical changes in the right paraspinous soft tissues and posterior subcutaneous fatty tissues at the L5-S1 level; and slight undulation along aspects of the L5-S1 disc remained.  *Id.* at 330-31.  Thus, there is objective medical evidence to support plaintiff's complaints prior to her second surgery in May 2009.

There is no objective medical evidence, however, to support plaintiff's complaints after the May 2009 surgery.  The record contains no MRIs or other tests after May 2009, only plaintiff's subjective complaints of pain.[7]  But plaintiff's subjective complaints are contradicted by her statements.  On July 30, 2009, plaintiff reported left leg and calf pain when she sits more than 30-45 minutes at time, but no problems with walking, standing, and lying down.  *Id.* at 321.  On September 9, 2009, plaintiff reported a significant reduction of back and left leg pain, an increased activity level, and that her low back and leg pain "improved almost 100%" with the use of Oxycontin.  *Id.* at 398, 542.  Finally, on July 26, 2010, plaintiff testified that she had hip and leg pain, but only occasional back pain.  *Id.* at 38, 542.

---

[7]   The record contains a treatment note, dated July 12, 2010, stating that Dr. Khan intended to order a CT scan of the lumbar spine, but the results of the CT scan are not a part of the record.  AR at 561.

1    As such, there is objective medical evidence to support plaintiff's

2    complaints prior to the May 2009 surgery but none to support her complaints

3    afterwards.

4            **2.     Inconsistent Work Stop Date**

5            The second ground for an adverse credibility finding was not clear and

6    convincing and supported by substantial evidence.  The ALJ stated that, in her

7    paperwork, plaintiff indicated that she stopped working on November 1, 2006 due

8    to her condition but that she actually stopped in 1993.  *Id*. at 16.  This appears to

9    be a simple error.  Although plaintiff indicated on a Disability Report that she

10   "stopped" working on November 1, 2006, in the same report, she also cited

11   November 1, 2006 as the date she became "unable to work" due to her condition

12   and listed her last job as ending in September 1993.  *Id.* at 156-57.  Elsewhere

13   throughout the record, plaintiff consistently conveyed that she stopped working in

14   1993.  *See, e.g., id.* at 34, 164, 228.

15           **3.     2007 Work**

16           The third ground the ALJ cited for finding plaintiff less credible, her work

17   in 2007, was clear and convincing and supported by substantial evidence.  The

18   ability to work while allegedly disabled is a clear and convincing reason to find a

19   claimant less credible.  *See Bray v. Astrue*, 554 F.3d 1219, 1227 (9th Cir. 2009) (a

20   claimant's employment and seeking of work while allegedly disabled are proper

21   grounds for discounting his testimony); *Copeland  v. Bowen*, 861 F.2d 536, 542

22   (9th Cir. 1988) (affirming the ALJ's adverse credibility finding due, in part, to

23   claimant's holding himself out as available to work).  Here, the ALJ noted that

24   plaintiff testified that in 2007, after her alleged disability onset date, she sold juice

25   from her home for a year.  *Id.* at 12, 16 n.1, 33-35.  Although this work did not

26   constitute substantial gainful activity, it illustrated an attempt and ability to work

27

28                                           14

while allegedly disabled.  Nothing in the record suggests that plaintiff stopped this job or did not work more hours due to her alleged inability.  *See id.* at 33-35, 42-43.

### 4.    Drug-Seeking Behavior

The fourth ground cited by the ALJ – plaintiff's drug-seeking behavior – was proper.  Drug-seeking behavior is a valid basis for an adverse credibility finding.  *See Gray v. Comm'r*, 365 Fed. Appx. 60, 63 (9th Cir. 2010) (drug-seeking behavior was a proper basis for finding the claimant not credible); *Edlund v. Massanari*, 253 F.3d 1152, 1157 (9th Cir. 2001) (same).

Here, the ALJ cited Dr. Gary Bennett's treatment notes in which he noted that plaintiff was "not honest" because she was seeking narcotics from another treating physician, Dr. Jason Berry.  AR at 16, 191-94.  During a December 19, 2007 visit, Dr. Bennett requested that plaintiff discontinue narcotic pain medications from her other physicians.  *Id.* at 296.  On May 15, 2008, Dr. Bennett learned through an insurance profile that plaintiff continued to receive hydrocodone/acetaminophen prescriptions from Dr. Berry.  *Id.* at 191-94.  Consequently, Dr. Bennett discussed the risks of narcotics use and explained that he would discontinue her medications if she sought narcotic medications from other physicians without informing him.  *Id.* at 194.

In addition, the record contains other evidence of continued drug-seeking behavior.  Although in subsequent visits, Dr. Bennett observed that plaintiff did not demonstrate any drug-seeking behavior, noting that plaintiff did not seek medications from other physicians, visit emergency rooms, or lose prescriptions, a closer examination of the record reveals that plaintiff was misleading him.  *Id.* at 275, 407.  Dr. Bennett reported that from July 2008 through September 2009, plaintiff was using OxyContin one to two times daily and topical pain relief lotion

15

1   for her pain, both of which were effective in reducing plaintiff's pain.  *Id.* at 398-

2   99, 406-07, 541.  Dr. Bennett specifically excluded supplemental narcotic

3   medications such as hydrocodone acetaminophen from the treatment plan.[8]  *Id*. at

4   541.  During this period, on several occasions, plaintiff reported to Dr. Bennett

5   that her pain level was zero and almost completely reduced with Oxycontin, and

6   she had an almost normal activity level.  *Id.* at 275, 398, 406-07.

7        In contrast, the record reflects that, during this same period, plaintiff

8   reported pain to other treating physicians and sought narcotic medications.  Dr.

9   Berry had prescribed vicodin (hydrocodone acetaminophen) at least once and

10  Norco (hydrocodone acetaminophen).  *Id.* at 265, 510; *see also id.* at 250, 471.

11  Plaintiff requested vicodin from  Dr. William F. Pearce.  *Id*. at 417.  And Dr. Van

12  H. Vu refilled a vicodin prescription for plaintiff.  *Id.* at 547.  The reports of pain

13  and seeking of narcotic medication were in contradiction to the information she

14  relayed to Dr. Bennett.

15       Thus, plaintiff's drug-seeking behavior was a clear and convincing reason

16  for discounting plaintiff's credibility.

17       **5.    Inconsistency with Third Party Report**

18       The final ground the ALJ cited in his adverse credibility finding was not

19  clear and convincing and supported by substantial evidence.  The ALJ noted a

20  minor discrepancy between plaintiff's function report and her mother's function

21  report.  *Id.* at 16.  Plaintiff checked off "using hands" as something affected by her

22  condition.  *Id.* at 120.  In contrast, plaintiff's mother did not.  *Id.* at 110.  Although

23  plaintiff marked "using hands" as something affected by her condition, she

24  _____

25       [8]    Dr. Bennett, against the recommendation of another physician to
    discontinue pain medication for plaintiff, recommended treatment with Neurontin
26  and OxyContin, and a trial with Tramadol or Ultram, but no supplemental narcotic
    medications such as hydrocodone acetaminophen combinations.  AR at 541.
27

28                                    16

clarified that she had arthritis in the hands and did not cite it as a basis for her application. *Id.* at 20.  Moreover, it is not expected that a third party would know every single symptom of a claimant's condition.  As such, this inconsistency was minor.

Accordingly, two-and-a-half of the reasons provided by the ALJ – lack of medical evidence to support her complaints prior to the May 2009 surgery, supposed inconsistency in stating her work stop date, and supposed inconsistency with her mother in whether the use of her hands was effected – were not clear and convincing.  But although the ALJ included reasons that were not clear and convincing, their inclusion was harmless because the ALJ provided substantial other clear and convincing reasons for discounting plaintiff's credibility.  In particular, the lack of medical evidence to support plaintiff's complaints after her May 2009 surgery, the work she did after her alleged onset date, and her drug-seeking behavior were all clear and convincing reasons that amply supported the ALJ's adverse credibility finding.  Accordingly, the ALJ did not err in discounting plaintiff's credibility.

## V.

## REMAND IS APPROPRIATE

The decision whether to remand for further proceedings or reverse and award benefits is within the discretion of the district court.  *McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989).  Where no useful purpose would be served by further proceedings, or where the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits.  *See Benecke v. Barnhart*, 379 F.3d 587, 595-96 (9th Cir. 2004); *Harman v. Apfel*, 211 F.3d 1172, 1179-80 (9th Cir. 2000) (decision whether to remand for further proceedings turns upon their likely utility).  But where there are outstanding issues that must be

resolved before a determination can be made, and it is not clear from the record that the ALJ would be required to find a plaintiff disabled if all the evidence were properly evaluated, remand is appropriate. *See Benecke*, 379 F.3d at 595-96; *Harman*, 211 F.3d at 1179-80.

Here, as set out above, remand is required because the ALJ erred at Step Five. On remand, the ALJ shall retain a vocational expert, inquire whether his or her testimony conflicts with the DOT, and ask the VE to explain any deviation. The ALJ shall then determine what work, if any, plaintiff is capable of performing.

## VI.

## CONCLUSION

IT IS THEREFORE ORDERED that Judgment shall be entered REVERSING the decision of the Commissioner denying benefits, and REMANDING the matter to the Commissioner for further administrative action consistent with this decision.

DATED: March 6, 2013

_____
SHERI PYM
United States Magistrate Judge

18